# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LAUREN SCOTTOLINE, individually and as Parent and Guardian of J.S.S., a Minor, and STEVEN SCOTTOLINE, Parent of J.S.S., a Minor,

Plaintiffs,

v.

WOMEN FIRST, LLC, and CHRISTIANA CARE HEALTH SYSTEM, INC.

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N19C-08-135 FWW

Submitted: November 20, 2023
Decided: December 15, 2023

## ORDER

*Upon Defendant Christiana Care Health System Inc.'s Second Motion in Limine to Exclude the Unreliable Causation Opinion of Plaintiffs' Expert Daniel Adler, M.D., joined by Defendant Women First, LLC,*
**GRANTED.**

*Upon Defendant Christiana Care Health System Inc.'s Motion in Limine to Exclude Testimony and Opinions of Plaintiffs' Expert Jody M. Masterson, R.N., joined by Defendant Women First, LLC,*
**GRANTED.**

Bruce L. Hudson, Esquire, Joshua J. Inkell, Esquire, and Daniel P. Hagelberg, Esquire, HUDSON, CASTLE & INKELL, LLC, 2 Mill Road, Suite 202, Wilmington, Delaware 19806, and Gregg W. Luther, Esquire and Melinda Young, Esquire, The Keenan Firm, 495 Grand Boulevard, Miramar Beach, FL 32550, Attorneys for Plaintiffs.

Bradley J. Goewert, Esquire, and Thomas J. Marcoz, Jr., Esquire, MARSHALL DENNEHEY WARNER COLEMAN & GOOGIN, 1007 N. Orange Street, Suite 600, P.O. Box 8888, Wilmington, Delaware 19899, and David Batten, Esquire, BATTEN LEE, 4141 Parklake Avenue, Suite 350, Raleigh, North Carolina 27612, Attorneys for Defendant Women First, LLC

John D. Balaguer, Esquire, BALAGUER MILEWSKI & IMBROGNO 2961 Centerville Road, Suite 300, Wilmington, Delaware 19808, Attorneys for Defendant Christiana Care Health System, Inc.

**WHARTON, J.**

2

This 15th day of December 2023, upon consideration of Defendant Christiana Care Health System, Inc.'s ("CCHS") Second Motion *in Limine* to Exclude the Unreliable Causation Opinion of Plaintiffs' Expert Daniel Adler, M.D. ("CCHS's Second Motion in Limine (Dr. Adler)"),[1] joined by Defendant Women First, LLC ("Women First"),[2] Defendant CCHS' Motion *in Limine* to Exclude Testimony and Opinions of Plaintiffs' Expert Jody M. Masterson, R.N. ("CCHS' Motion in Limine (Nurse Masterson)",[3] joined by Women First,[4] the Response of Plaintiffs Lauren Scottoline, individually, and as Parent and Guardian of J.S.S., a minor, and Steven Scottoline, Parent of J.S.S., a minor ("Scottolines" or "Plaintiffs") to CCHS' Second Motion in Limine (Dr. Adler),[5]   CCHS' Reply in Support of Second Motion *in Limine* (Dr. Adler),[6] joined by Women First,[7] argument, and the record in this case, it appears to the Court that:

1.      The Scottolines brought this medical negligence action following the birth of their child, J.S.S.  The gravamen of their complaint is that J.S.S. was deprived of oxygen during labor and delivery and sustained injuries, some of which are permanent, as a result of negligent medical care. Before the Court is the

---

[1] Def. CCHS' Second Mot. *in Limine* (Dr. Adler), D.I. 193.
[2] Def. Women First's Joinder, D.I. 195
[3] Def. CCHS' Mot. *in Limine* (Nurse Masterson), D.I. 198.
[4] Def. Women First's Joinder, D.I. 202.
[5] Pls.' Resp. to CCHS' Second Mot. *in Limine* (Dr. Adler), D.I. 204.
[6] Def. CCHS' Reply, D.I. 205.
[7] Def. Women First's Joinder, D.I. 207.

Defendants' second set of motions *in limine*. CCHS first sought to exclude Dr. Daniel Adler's ("Dr. Adler") opinion that a brain injury J.S.S suffered during delivery caused his autism spectrum disorder. That effort was successful when the Court, exercising its gatekeeper function under *Daubert*,[8] held that Dr. Adler's proffered opinion was "not borne out by the evidence he cites in support of his causation conclusion, and because he did not use a reliable methodology to rule out the other potential causes for this condition [.]"[9]

1. The following facts and procedural history are taken from the Court's earlier Memorandum Opinion:[10]

> The minor child, J.S.S., was born at Christiana Hospital on July 28, 2015. Four years later, J.S.S.'s parents filed this action against Christiana Care Health Services, Inc. ("CCHS") and Women First, LLC ("Women First" and collectively with CCHS, "Defendants"), the practice that delivered J.S.S. Plaintiffs allege Defendants' negligence caused J.S.S. to be deprived of oxygen during the birth, resulting in tissue and organ damage, including a permanent Hypoxic Ischemic Encephalopathy ("HIE") injury to the brain. The complaint alleges J.S.S. also suffered injuries to other organs, including his

---

[8] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).
[9] *Scottoline v. Women First, LLC,* 2023 WL 2325701 (Del. Super. Ct. Mar. 1, 2023).
[10] The Memorandum Opinion was issued by the originally assigned Trail Judge, who, after issuing the Opinion, conducting a pretrial conference, and setting a new trial date, was elevated to the Delaware Supreme Court. On July 12, 2023 the matter was reassigned to another judge of this Court, and reassigned again to a third judge on September 15, 2023. Finally, it was reassigned to this Judge on September 21, 2023.

kidneys, liver, and muscle systems as a result of oxygen deprivation.

J.S.S. was born with "no respiratory effort" and falling blood oxygenation levels. He was intubated within five minutes of his birth and experienced seizures approximately 20 minutes after his birth. The treating neurologist's and neonatologist's records indicate he was "extremely sick" and initial testing was "consistent with severe encephalopathy." J.S.S. was diagnosed with HIE six days after he was born.

J.S.S. spoke before his first birthday and walked at approximately 16 months. At 18 months, he stopped speaking. He slowly developed three-word sentences, but those sentences rarely were purposeful. He began reading at age three but has significant attention issues at school. J.S.S. receives Special Education services along with occupational and speech therapy.

In 2017 and 2018, J.S.S.'s treating clinicians noted developmental delays and behaviors "consistent with" an Autism Spectrum Disorder ("ASD") diagnosis. In May 2018, J.S.S. was diagnosed with ASD by his school district. He was reevaluated in February 2021, and that evaluation confirmed the previous ASD diagnosis. Further testing showed significant developmental delays, including in speech and language, social responsiveness, auditory comprehension, and expressive language.

Plaintiffs filed this action on August 15, 2019 on behalf of J.S.S. and Lauren Scottoline, J.S.S.'s mother. The Amended Complaint, filed March 2, 2021, alleges Defendants provided negligent medical care while Lauren Scottoline was hospitalized and during her labor and delivery with J.S.S., and Defendants' alleged negligence proximately caused J.S.S.'s injuries, including "physical injuries, emotional pain and suffering past and future, increased risk of harm, loss of chance, loss of

5

enjoyment of life past and future, extensive medical bills past and future, extensive lifetime care bills, [and] loss of earnings."

One of Plaintiffs' experts, Dr. Daniel Adler, is a pediatric neurologist whose opinion Plaintiffs offer to prove causation and damages. Dr. Adler examined J.S.S., reviewed his medical history, and issued two reports in this matter: one report dated June 4, 2019 (the "First Adler Report") and the other dated July 14, 2021 (the "Second Adler Report"). In the First Adler Report, after summarizing J.S.S.'s relevant medical and social history, Dr. Adler opined that "all of J.S.S.'s neurological and neurodevelopmental disabilities are the result of the hypoxic ischemic brain injury [he] suffered during the labor and delivery process." More specifically, Dr. Adler opined that his examination of J.S.S. "confirms that [his] behavior falls within the autism spectrum," and "while the causes of autism are diverse, in this case, the cause of J.S.S.'s qualitative disturbance in social interaction and play is [HIE]." Dr. Adler further opined that J.S.S.'s neurological injuries and disabilities are permanent in nature, he will not be able to live independently or be employed in the competitive job market, and he will "continue to require extraordinary medical care." The Second Adler Report confirmed that Dr. Adler's previous findings and opinions remained unchanged after his July 2021 examination of J.S.S.[11]

2.     The Court analyzed CCHS' motion to exclude Dr. Adler's causation opinion under Delaware Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[12]  First, the Court concluded that Dr. Adler's causation

---

[11] *Scottoline,* 2023 WL2325701 at *1-2 (internal citations omitted).
[12] *Id.* at *3-6.

6

opinion as to J.S.S.'s Autism Spectrum Disorder was not admissible because it did not have a reliable scientific basis.[13] Dr. Adler had opined that "all of J.S.S.'s neurological and neurodevelopmental disabilities are the result of the HIE injury he suffered during labor and delivery."[14] Further, he "confirmed that J.S.S.'s behavior 'falls within the autism spectrum'".[15] As a second basis to exclude Dr. Adler's opinion, the Court held that it was not the product of a reliable methodology and amounted to "little more than the expert's *ipse dixit* conclusions."[16]

3.     A pretrial conference was held on March 10, 2023. The primary discussion topic was what remained, if anything, of the Scottolines' causation and damages claims. As a result of that discussion, the Court granted CCHS' oral motion to continue the trial, then scheduled for April 3rd, and rescheduled the trial to January 29, 2023, with the expectation that further discovery would take place.[17]

4.     On June 8, 2023, Dr. Adler completed another medical report on J.S.S. ("Third Adler Report").[18] Under "Clinical Impression" the Third Adler Report lists the same diagnoses contained in his first two reports,[19] but adds, " 5. Fine & gross

---

[13] *Id.* at 3.
[14] *Id.* at 4.
[15] *Id.*
[16] *Id.* at 6.
[17] D.I. 188.
[18] *See* Pls.' Response to Defs.' Second Mot. in Limine (Dr. Adler),Ex., C, ("Third Adler Report"), D.I. 204.
[19] *Scottoline,* 2023 WL 2325701, at *2.

motor incoordination. 6. Language impairment. 7. Cognitive impairment."[20] Dr.

Adler states his opinion in the Third Adler Report:

> It is my medical opinion within a reasonable degree of medical probability as a board certified pediatric neurologist that the hypoxic-ischemic brain injury suffered by [J.S.S.] was significant and caused permanent brain damage. It is my medical opinion within a reasonable degree of medical probability as a board-certified pediatric neurologist that this hypoxic-ischemic-brain injury has caused permanent brain injury consisting of motor impairment along with language, behavioral, cognitive and memory problems. This statement is supported by the medical literature.[21]

Dr. Adler concludes that "It remains my medical opinion within a reasonable degree of medical probability that all of the neurological and neurodevelopmental disabilities of [J.S.S.] are the result of a hypoxic-ischemic brain injury."[22]

5. CCHS again moves to exclude from trial the opinions stated in the Third Adler Report "for the same reasons it precluded the opinions in his previous reports.[23] CCHS argues that in the Third Adler Report, Dr. Adler again acknowledges that J.S.S. has "'a severe behavioral disorder that has been diagnosed as autism,'" and "'a mixed receptive-expressive language disorder and cognitive communication deficits within the context of autism spectrum disorder.'"[24] Dr.

---

[20] Third Adler Report at 2.
[21] *Id.* at 3.
[22] *Id.* at 6.
[23] CCHS' Second Mot. *in Limine* (Dr. Adler), at ⁋ 9, D.I. 193.
[24] *Id.* at ⁋ 6

Adler again asserts that J.S.S.' behavior meets the DSM-5 criteria for autism and that HIE "'caused the behavioral syndrome seen in [the child] referred to as autism… .'"[25] CCHS contends that although Dr. Adler's Third Report included references to medical literature in addition to what he had previously offered, that additional literature fails to provide a basis for his opinion.[26] In sum, it is CCHS' position that Dr. Adler's "general opinion that HIE causes autism still lacks a reliable scientific basis, and his specific opinion that [J.S.S.'] autism was caused by HIE is still not the product of a reliable methodology, but rather 'little more than the expert's *ipse dixit* conclusions.'"[27]

6. In their response, Plaintiffs, relying on *Norman v. All About Women, P.A.*,[28] argue that Dr. Adler's opinion is admissible pursuant to D.R.E. 702.[29] Alternatively, Plaintiffs request an evidentiary hearing with Dr. Adler to answer questions regarding his causation opinion.[30] In particular, they argue that Dr. Adler's own professional education and experience, together with his personal examinations of J.S.S., are sufficient to overcome any *Daubert* barriers to the admission of his causation opinion.[31] While disputing the necessity for support for

---

[25] *Id.*
[26] *Id.* ¶ 7.
[27] *Id.*
[28] 193 A.3d 726 (Del. 2018).
[29] Pls.' Response to Defs.' Second Mot. *in Limine* (Dr. Adler), *passim*, D.I. 204.
[30] *Id.* at ¶ 26.
[31] *Id.* at ¶¶ 13-15.

9

Dr. Adler's opinion in the medical literature, they also contend that at least one of Dr. Adler's references cites birth asphyxia as an "environmental factor[] implicated in the pathogenesis of ASD."[32]

7.      The Third Adler Report's causation opinion leaves the parties in the same position as they were at the pre-trial conference. The causation opinion in the Third Adler Report is practically indistinguishable from the same causation opinion that the Court ruled inadmissible. Plaintiffs implicitly admit as much by their emphasis on *Norman.* At argument, Plaintiffs made explicit what they only implied in their Response – the Court should reconsider its Memorandum Opinion under Superior Court Civil Rule 60.

8.      Reconsideration under Superior Court Civil Rule 60(b)(6) allows the Court to relieve a party or a party's representative from a final order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied, released, or discharged judgment or reversed judgment upon which the challenged judgment was based; and (6) any other reason justifying relief.[33] Delaware has adopted an "extraordinary circumstances" test for granting relief under Rule 60(b)(6).[34]

---

[32] *Id.* at ¶ 19.
[33] Super. Court Civil R. 60(b)(6).
[34] *Jewell v. Div. of Soc. Servs.* 401 A.2d 88, 90 (Del.1979).

10

9. Superior Court Civil Rule 59(e) sits in contrast. Pursuant to Rule 59(e), a motion for reargument "shall be served and filed within 5 days after the filing of the Court's opinion or decision."[35] A motion for reargument will be granted only if the Court has "overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[36] A motion for reargument is not an opportunity for a party to either rehash arguments already decided by the Court or present new arguments not previously raised.[37] Therefore, to succeed on such a motion, the moving party has the burden of demonstrating the existence of newly discovered evidence, a change in the law, or manifest injustice.[38]

10. A fair reading of the Plaintiffs' Response shows it to be a Rule 59(e) motion for reargument in disguise. It is based almost exclusively on the contention that the Court either overlooked or misapprehended controlling legal precedent, *i.e.*, *Norman*. Properly construed as a motion for reargument, it is untimely. Further, even if the Court were to treat it as a Rule 60 motion for reconsideration, the Plaintiffs have not demonstrated "extraordinary circumstances" warranting relief.

---

[35] Super. Court Civ. R. 59(e).
[36] *Janeve Co., Inc. v. City of Wilmington*, 2009 WL 2386152, at *1 (Del. Super. July 24, 2009) (quoting *Reid v. Hindt*, 2008 WL 2943373, at *1 (Del. Super. July 31, 2008)).
[37] *See Reid*, 2008 WL 2943373, at *1 (citations omitted).
[38] *Id.*

11

11.    In sum, the Court finds that the Third Adler Report offers opinions that are not materially different from or better supported than Dr. Adler's previously excluded opinions. They are excluded for the same reasons set out in the Court's Memorandum Opinion.  Further, Plaintiffs' efforts to convince the Court to revisit its earlier Memorandum Opinion either are untimely under Rule 59(e), or lacking in extraordinary circumstances under Rule 60.   The Court also declines the Plaintiffs' invitation to hold a *Daubert* evidentiary hearing.  Dr. Adler has issued three reports and he has been deposed.  The Plaintiffs have had ample opportunity to develop a record that passes *Daubert* muster.  Finally, because Nurse Masterson's testimony and opinions are derivative of Dr. Adler's, they are excluded as well.

**THEREFORE**, for the reasons stated above, Defendant Christiana Care Health System Inc.'s Second Motion *in Limine* to Exclude the Unreliable Causation Opinion of Plaintiffs' Expert Daniel Adler, M.D., joined by Defendant Women First, LLC, is **GRANTED**.   Defendant Christiana Care Health System, Inc.'s Motion *in Limine* to Exclude Testimony and Opinions of Jody M. Masterson, R.N., joined by Defendant Women First, LLC, is **GRANTED.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

12